UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| DONALD MEJIA, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:14-CV-238 |
| § | |
| MARIA D RAMIREZ, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

In this prisoner civil rights action, Plaintiff Donald Mejia complains of the conditions of confinement at the McConnell Unit between January 1, 2013 through December 1, 2013. (D.E. 1). Defendants have filed a motion for summary judgment to dismiss this action on the grounds that Plaintiff has failed to exhaust his administrative remedies. (D.E. 24). Plaintiff has filed a response in opposition (D.E. 30), and a cross-motion for summary judgment. (D.E. 31).

For the reasons stated herein, it is respectfully recommended that the Court grant in part Defendants' motion for summary judgment as to Plaintiff's claims of extreme temperatures and commissary visitation for failure to exhaust, but deny Defendants' summary judgment motion concerning Plaintiff's complaints about recreation, meals, and showers, claims that Plaintiff has exhausted as required by 42 U.S.C. § 1997e(a). It is further respectfully recommended that Plaintiff's motion for summary judgment be denied because genuine issues of material fact exist concerning the conditions of confinement

1 / 19

complained of and whether or not the conditions constitute violations of the Eighth Amendment under current standards of decency.

## I. JURISDICTION.

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.

## II. PROCEDURAL BACKGROUND.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is currently confined at the Connally Unit in Kenedy, Texas, although his complaint concerns events that occurred while he was incarcerated at the McConnell Unit in Beeville, Texas. Plaintiff filed his original complaint on June 2, 2014, alleging that between January 1, 2013 and December 1, 2013, he was subjected to unconstitutional conditions of confinement while held in Administrative Segregation (Ad. Seg.) at the McConnell Unit.. (D.E. 1). In particular, Plaintiff complained that, during this time, he was: denied recreation on 255 days: given a "johnny sack" or cold sack meal, three meals a day, for 134 days; denied personal hygiene items; deprived of a shower for 121 days; denied bedding necessities; and exposed to extreme temperatures and poor ventilation. He named the following five individuals as Defendants: (1) Warden Maria D. Ramirez; (2) Warden Gary L. Currie; (3) P. Chapa, Assistant Region IV Director; (4) Captain James Thompson, III; and (5) Major James A. McKee. *Id.*

On July 29, 2014, a *Spears*[1] hearing was conducted, following which service was ordered on the five named Defendants. (D.E. 13).

---

[1] *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985).

On September 15, 2014, Defendants filed their answer and raised the defense of qualified immunity. (D.E. 15).

On December 1, 2014, Plaintiff filed his own Declaration made under penalty of perjury (D.E. 17), as well as the declarations of four other offenders attesting to the conditions complained-of at the McConnell Unit. (D.E. 18-21).

On February 3, 2015, Defendants filed the instant motion for summary judgment to dismiss Plaintiff's claims for failure to exhaust administrative remedies. (D.E. 24). In support of their motion, Defendants offer a copy of Plaintiff's grievance records from January 2012 to the present. (See D.E. 24-1, p. 2, D.E. 24-2, p. 1, Business Records Affidavits of Kelli Ward verifying Plaintiff's grievance records).[2]

On March 2, 2014, Plaintiff filed his response in opposition to Defendants' summary judgment motion (D.E. 30), and his cross-motion for summary judgment. (D.E. 31).

## III. SUMMARY JUDGMENT EVIDENCE ON EXHAUSTION.

On October 23, 2012, Plaintiff filed a Step 1 grievance, Grievance No. 2013031490, noting that he had been transferred from 11-Building Solitary, cell 20, to 12-Building Ad. Seg., 64 cell, and that his personal property had been lost. (D.E. 24-2, pp. 39-40). Warden Currie denied the grievance on the grounds that Plaintiff had signed for his property on November 7, 2013, and he had no proof of ownership of the missing property. *Id.* at 40. Plaintiff filed a Step 2 appeal of Grievance No. 2013031490. (D.E. 24-2, pp. 37-38). The Regional Director stated that Plaintiff's claim had been investigated and that there was

---

[2] Although Plaintiff complains of conditions arising between January 1, 2013 through December 1, 2013, Defendants have provided earlier and later grievances. Unless specifically related to conditions of confinement, grievances filed outside of the complained-of time frame are not considered.

insufficient evidence to support Plaintiff's claim that staff was responsible for his lost property. *Id.* at 48.

On March 11, 2013, Plaintiff filed a Step 1 grievance, Grievance No. 2013107814, complaining about commissary accessibility. (D.E. 24-2, pp. 21-22). Plaintiff pointed out that the unit had been on lockdown and that ad. seg. inmates had not been to the commissary in 33 days, despite TDCJ regulations which authorize more frequent visits to purchase $70.00 worth of "essentials" every two weeks. *Id.* at 21. Plaintiff admitted that he, personally, was on commissary restriction, and the combination of his restriction and lockdown had resulted in his not making a commissary purchase in 135 days. *Id.* As such, Plaintiff had been unable to purchase personal hygiene items, such as moisturizing lotion to treat his severe dry skin. *Id.* at 22. On April 17, 2013, Warden Monroe denied Plaintiff's grievance stating that on March 18, 2013, Plaintiff was permitted to visit the commissary. *Id.* Plaintiff did not file a Step 2 appeal of this grievance.

On March 20, 2013, Plaintiff filed a Step 1 grievance, Grievance No. 2013115053, complaining that during a March 18, 2013 shake down, his Bible, a radio, and an antenna/charger/multi-purpose wire were confiscated. (D.E. 24-2, pp. 31-32). On April 22, 2013, Warden Monroe denied Plaintiff's grievance regarding the confiscation of his property. *Id.* at 32. Plaintiff filed a Step 2 appeal of Grievance No. 2013115053 arguing that the investigation was inadequate, but it was denied. (D.E. 24-2, pp. 29-30).

On December 6, 2013, Plaintiff filed a Step 1 grievance, Grievance No. 201457108, complaining that, on November 29 and 30, and December 1 and 2, 2013, Plaintiff was denied showers and dayroom recreation due to staff shortages. (D.E.24-1, pp. 5-6).

Plaintiff related that this had been "going on for the whole year," that the denial of showers and recreation was causing him physical and mental anguish and that he had lost approximately 25 pounds as a result thereof. Plaintiff continued that, between January 1, 2013 and December 1, 2013, he had been denied 181 showers, 235 recreation days, and had been served 134 days-worth of johnny sack meals. *Id.* at 5. Plaintiff requested that matters be remedied or that he be transferred to another prison. *Id.*

Following an investigation (D.E. D.E. 24-1, pp. 8-13), on February 24, 2014, Warden Ramirez denied Plaintiff's Grievance No. 201457108, responding:

> Complaint has been noted. The ML Unit Administration exhausts all measures to ensure that recreation and showers are completed daily. Due to current staffing issues there are occasions when recreation and showers are not completed. This limited movement is to ensure the safety and security of the offender population and staff. Furthermore, offenders are not denied recreation or showers, nor are privileges taken. No further action is warranted.

(D.E. 24-1, p. 6).

On February 25, 2014, Plaintiff filed a Step 2, appeal of Grievance No. 2014057108, arguing that the routine feeding of johnny sack meals due to staff shortages violated the Eighth Amendment as well as Texas law that requires inmates be provided "wholesome and nutritious" meals. (D.E. 24-1, pp. 3-4). Plaintiff also objected to Warden Ramirez' explanation regarding showers and recreation. *Id.* at 3. On May 7, 2014, Assistant Region IV Director P. Chapa denied Plaintiff's Step 2 appeal finding that showers and recreation "are ran [sic] when staffing allows." *Id.* at 4.

## IV. SUMMARY JUDGMENT STANDARD.

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id.* Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the

burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

V. DISCUSSION.

    A. Exhaustion.

Defendants move for summary judgment to dismiss Plaintiff's claims for failure to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). (*See* D.E. 24). The Prison Litigation Reform Act, 42 U.S.C. § 1997e, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S. C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002). Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). Because exhaustion is an affirmative defense, inmates are not required to plead or demonstrate exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 215 (2006).

The TDCJ provides a two-step procedure for presenting administrative grievances.[3] *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam). The Fifth Circuit requires that both steps be completed in order to file suit in federal court. *Johnson v. Johnson*, 385 F.3d 503, 515-16 (5th Cir. 2004) ("[A] prisoner must pursue a grievance through both steps for it to be considered exhausted."). *See also Dillion v. Rogers,* 596 F.3d 260, 268 (5th Cir. 2010) ("under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion; instead, we have required prisoners to exhaust available remedies properly.").

---

[3] Step 1 requires the inmate to present an administrative grievance at his unit within fifteen days from the date of the complained-of incident. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). The inmate should then receive a response from the unit official, and if unsatisfied with the response, the inmate has ten days to appeal by filing a Step 2 grievance, which is handled at the state level. *Id.*

### (1) Complaints about temperatures and air circulation/ventilation.

Defendants move for summary judgment to dismiss Plaintiff's complaints about extreme temperatures and poor air ventilation in Ad. Seg. on the grounds that Plaintiff failed to raise this claim in a grievance. (D.E. 24, pp. 7-8). In his summary judgment response, Plaintiff states:

> Plaintiff did not complain of extreme temperatures and lack of ventilation at the McConnell Unit on his Step 1 and Step 2 grievance because he was not provided enough space on the forms to do so in an adequate manner due to grievance policy of not accepting attachments. If in fact Plaintiff would [have] brought attention and written about the extreme temperatures and lack of ventilation in an attachment on the Step 1 & 2 grievances, the Grievance Officer would have checked boxes 4 in Exhibits A-3 and A-5 stating "Inappropriate/excessive attachments," and returned Plaintiff's Step 1 & 2 grievances without process until said attachments were removed. This is why Plaintiff brought it to the Court's attention during [the] Evidentiary Hearing recording at 3:34:30-3:35:36 on July 29, 2014 by telephone conference to identify the nature of this complaint.

(D.E. 30, p. 5).

Plaintiff admits that he failed to exhaust his complaint about extreme temperatures and air ventilation in Ad. Seg., and his excuse that there was not enough space on the grievance forms is wholly without merit. Nothing prevented Plaintiff from filing an additional grievance within the time limits set forth by TDCJ regulations to raise his extreme temperature/air circulation claim.[4] The uncontested summary judgment evidence establishes that this claim is unexhausted. Thus, it is respectfully recommended that Defendants be granted summary judgment in their favor on this claim, and that Plaintiff's

---

[4] TDCJ policy states that an offender may file one grievance per every 7 days.

9 / 19

claim alleging unconstitutional extreme temperatures and lack of air circulation in the McConnell Unit Ad. Seg. be dismissed with prejudice for failure to exhaust.

**(2) Complaints about commissary visits.**

In his original complaint, Plaintiff complained that he had been denied commissary privileges such that he was unable to purchase necessary personal items that are not provided by the prison, in violation of his constitutional rights as well as TDCJ policy that authorizes Ad. Seg. prisoners to visit commissary once every two weeks for purchases up to $70.00. The summary judgment evidence demonstrates that on March 11, 2013, Plaintiff filed a Step 1 grievance, Grievance No. 2013107814, specifically raising this issue. (D.E. 24-2, pp. 21-22). Plaintiff related in this grievance that he had not been to commissary in 33 days and that he had spoken to Warden Ramirez about the problem. *Id.* at 21. However, although Plaintiff filed properly a Step 1 grievance about commissary visitation, he failed to complete the exhaustion process because he did not file a Step 2 appeal. Warden Monroe's response to Plaintiff's Step 1 grievance indicates that Plaintiff was allowed to visit the commissary on March 18, 2013, and perhaps this was resolution enough for Plaintiff at that time. However, the issue itself, regular commissary visitation, was neither addressed or resolved in Plaintiff's favor, and therefore, he was required to file a Step 2 appeal for purposes of proceeding with a claim in federal court. *See Booth,* 532 U.S. at 739 (the word "exhausted" refers to "procedural means, not the particular relief ordered"); *Woodford*, 548 U.S. at 90 ("It makes no sense to demand that someone exhaust 'such administrative [redress]' as is available; one 'exhausts' processes, not forms of relief, and the statute provides that one must."). Further, exhaustion must be *proper*, that is, the inmate is required

to follow "all steps that the agency holds out" for the purposes of giving the agency a full and fair opportunity to adjudicate the inmate's claims and correct its own errors. *Woodford*, 548 U.S. at 90. Finally, it is the TDCJ's procedure, not the PLRA, "that define[s] the boundaries of proper exhaustion". *Jones*, 549 U.S. at 218 (holding that where a prison's procedure did not require naming particular officials in a grievance, a court rule imposing such an exhaustion requirement was not warranted).

The uncontested summary judgment evidence establishes that Plaintiff did not file a Step 2 appeal of Grievance No. 2013107814 regarding commissary visitation and the ability to purchase personal hygiene items on a regular basis. Accordingly, it is respectfully recommended that Defendants be granted summary judgment in their favor on this claim, and that this claim be dismissed with prejudice for failure to exhaust.

**(3)     Failure to identify individual Defendants in grievances.**

Defendants move for summary to dismiss Plaintiff's claims against them for failure to exhaust on the grounds that Plaintiff failed to identify or name any individual Defendant in his grievances complaining about the conditions of confinement. In particular, Defendants note that in his December 6, 2013 Step 1 grievance, Grievance No. 2014057108, in which Plaintiff complains about showers, recreation days, and johnny sacks, he does not suggest that any named Defendant was personally involved in the constitutional violation or otherwise put on notice a named Defendant of his claims against him or her personally, but only states that he talked to Sergeant Ramirez (not a Defendant), about the issues. (D.E. 24, pp. 8-9). In his summary judgment response, Plaintiff admits that he did not know exactly which officers or officials should be held accountable for his complaints. (D.E. 30, p. 2).

In *Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004), the Fifth Circuit discussed how much detail is required in a grievance for purposes of effectively exhausting administrative remedies. The Court noted that one of the purposes of the exhaustion requirement is to give officials A>time and opportunity to address complaints internally.=@ *Johnson*, 385 F.3d at 517 (citations omitted). A grievance "should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Id.* Further, the nature of the complaint will influence how much detail is necessary. *Id.* For example, a complaint about a correctional officer would identify a specific person, whereas a complaint about a prison condition, such as vermin in a cell or that commissary costs are too high, might not identify any individual. *Id.* Finally, the *Johnson* Court noted that the intent of the grievance procedure is not to provide personal notice to a particular official that he may be sued; the grievance is not the summons and complaint that initiates adversarial litigation. *Id.,* 385 F.3d at 522, citing *Brown v. Sikes,* 385 F.3d 503, 522 ) 11th Cir. 2000)

Based on the holding in *Johnson*, Defendants' summary judgment argument fails as to Plaintiff's claims regarding showers, recreation, and johnny sacks. On December 6, 2013, Plaintiff filed his Step 1 grievance complaining about these issues. (D.E. 24-1, pp. 5-6). In response, McConnell unit officials conducted an investigation into Plaintiff's claims. (D.E. 24-1, pp. 8-13). That is, Plaintiff's Step 1 grievance was clear and precise enough to alert prison officials as to his complaints and to open an investigation thereon. Indeed, the investigating officer summarized Plaintiff's complaints as follows:

> Offender is claiming he was denied showers and dayroom rec due to staff shortages. Claims this has been going on for over a

> year now, no showers, rec, or hot meals. Alleges cruel and unusual punishment.

(D.E. 24-1, p. 8).

Plaintiff's Step 1 grievance adequately placed prison officials on notice of the basis of his claims, and he exhausted the grievance process by filing a Step 2 appeal. (D.E. 24-1, pp. 3-4). Thus, it is respectfully recommended that Defendants' motion for summary judgment to dismiss Plaintiff's unconstitutional conditions of confinement claims regarding showers, recreation, and johnny sacks for failure to exhaust administrative remedies be denied as the summary judgment evidence establishes these claims are in fact exhausted.

## VI. PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT.

Plaintiff has filed a cross-motion for summary judgment, arguing that the uncontested evidence establishes that an undisputed staff shortage at the McConnell Unit caused the unconstitutional conditions of confinement complained-of, such that he is entitled to summary judgment in his favor. (D.E. 31).

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. Prison officials must provide humane conditions of confinement; ensure that inmates receive adequate food, clothing, shelter, and medical care; and take reasonable measures to guarantee the safety of the inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions that result in Aunquestioned and serious deprivations of basic human needs@ or Adeprive inmates of the minimal civilized measure of life=s necessities@ violate the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

The Supreme Court has developed a two-part analysis to govern Eighth Amendment challenges to conditions of confinement. First, under the Aobjective component,@ a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment. *Hudson*, 503 U.S. at 8. The challenged condition must be Aextreme.@ *Id.* at 9. While an inmate Aneed not await a tragic event@ before seeking relief,@ *Helling v. McKinney*, 509 U.S. 25, 33 (1993), he must at the very least show that a condition of his confinement Apose[s] an unreasonable risk of serious damage to his future health@ or safety. *Id.* at 35. Moreover, the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury will actually be caused by exposure to [the challenged condition of confinement]. *Id.* It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwilling to such a risk. *Id.* In other words, the prisoner must show that the risk of which he complains is not one that today=s society chooses to tolerate. *Id.* at 36. The Eighth Amendment thus guarantees that prisoners will not be Adeprive[d] ... of the minimal civilized measure of life=s necessities.@ *Rhodes*, 452U.S. at 347.

Second, the prisoner must show that the defendant prison officials Aacted with a sufficiently culpable state of mind@ with regard to the condition at issue. *Hudson*, 503 U.S. at 8. The proper standard is that of deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). Negligence does not suffice to satisfy this standard, *id.* at 305, but a prisoner need not show that the prison official acted with Athe very purpose of causing harm or with

knowledge that harm would result.@ *Farmer*, 511 U.S. at 835. In defining the deliberate indifference standard, the *Farmer* Court stated:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. Furthermore, the official may escape liability for known risks Aif [he] responded reasonably to the risk, even if the harm ultimately was not averted.@ *Id.* at 844.

**(1)     Personal hygiene.**

The Fifth Circuit has held that filthy cell conditions may constitute an Eighth Amendment violation. *Gates v. Cook,* 376 F.3d 323, 338 (5th Cir. 2004). Other circuits have made similar holdings; the Eighth Circuit has held that a prisoner being placed in a cell covered with filth and human waste for a two-year period without proper cleaning supplies constitutes cruel and unusual punishment. *Howard v. Adkison,* 887 F.2d 134, 137 (8th Cir. 1989) (recognizing that "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time"); *see also McBride v. Deer,* 240 F.3d 1287, 1292 (10th Cir. 2001) (holding that three days in a feces-covered cell states a claim upon which relief could be granted).

In this case, Plaintiff alleges that he was denied 181 showers between January 1 2013 and December 1, 2013. That is, out of 334 days, Plaintiff received a shower on 153 days. Plaintiff offers no summary judgment evidence on whether or not this shower frequency constitutes a violation of the Eighth Amendment, nor does he explain how the lack of

showers caused him personal injury or harm. Thus, it is respectfully recommended that his cross-motion for summary judgment regarding showers be denied without prejudice.

**(2)    Recreation days.**

Plaintiff claims that he was denied 235 recreation days out of 334 days, and only given 99 recreation days during this time.

Inmates have no protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a *per se* constitutional violation." *Lewis v. Smith,* 277 F.3d 1373, 2001 WL 1485821 at *1 (5th Cir. 2001) (citing *Miller v. Carson,* 536 F.2d 741, 751 n.12 (5th Cir. 1977); *Stewart v. Winter,* 669 F.2d 328, 336 n. 19 (5th Cir. 1982)); *see also Martin v. Scott,* 156 F.3d 578, 580 (affirming limits on recreation times). "What is constitutionally required, however, is that [the prisoner] not be confined for long periods without the opportunity for regular physical exercise." *Lewis,* 2001 WL 1485821 at *1 (citation omitted). To succeed on a claim for lack of exercise, Plaintiff must provide facts that "support the existence of any health hazard under the specific circumstances involved." *Ruiz v. Estelle,* 679 F.2d 1115, 1152 (5th Cir.), amend in part, vacated in part on other grounds, 688 F.2d 266 (5th Cir. 1982).

In this case, Plaintiff complains that, due to lack of exercise and the other conditions complained of, he has lost 25 pounds and suffered related mental anguish. However, he has offered no summary judgment evidence as to the specific dates he was denied exercise, his corresponding weight loss, or any requests to medical. There is no summary judgment evidence to address this claim at this time. Thus, it is respectfully recommended that

Plaintiff's cross-motion for summary judgment regarding recreation be denied without prejudice.

### (3) Johnny sacks.

Plaintiff complains that he was denied hot meals and given "johnny sacks" for a total of 134 days or 402 meals during January 1, 2013 through December 1, 2013. He claims that the deprivation of hot meals caused him to lose weight and to suffer physical and mental harm.

The Fifth Circuit has held that inmates have a constitutional right to receive reasonably adequate food. *George v. King,* 837 F.2d 705 (5th Cir. 1987). However, the deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the minimal civilized measures of life's necessities. *Talib v. Gilley,* 138 F.3d 211, 214 n. 3 (5th Cir. 1998). In *Talib,* the Fifth Circuit stated that missing fifty meals over a five-month period did not constitute the denial of the minimal civilized measures of life's necessities.

Here, for purposes of § 1915A, Plaintiff alleged sufficient facts to state a claim regarding inadequate food. However, there is no summary judgment evidence offered on this claim. Plaintiff does not detail the dates on which the johnny sacks meals were given, the contents of the meals, or his parallel weight loss. Thus, it is respectfully recommended that his cross-motion for summary judgment on this claim be denied without prejudice.

## VII. RECOMMENDATION.

Based on the foregoing, it is respectfully recommended that the Court grant Defendants' motion for summary judgment (D.E. 24) in part and dismiss for failure to

exhaust Plaintiff's unconstitutional conditions of confinement claims concerning extreme temperatures, air circulation/ventilation, and commissary visitation. However, it is respectfully recommended that Defendants' motion for summary judgment be denied as to Plaintiff's claims regarding showers, recreation days, and johnny sacks. Finally, it is respectfully recommended that Plaintiff's cross-motion for summary judgment be denied (D.E. 31) as genuine issues of material fact exists on the issues of immunity, personal involvement, and whether or not Plaintiff's allegations, when presented via summary judgment, state cognizable §1983 claims.

Respectfully submitted this 10th day of April, 2015.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).