United States District Court
Southern District of Texas
**ENTERED**
February 11, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DONALD MEJIA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-238 |
| | § | |
| MARIA D RAMIREZ, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION ON CROSS-MOTIONS
## FOR SUMMARY JUDGMENT

In this prisoner civil rights action, Plaintiff Donald Mejia complains of the conditions of confinement at the McConnell Unit between January 1, 2013 and December 1, 2013. (D.E. 1). Defendants have filed a motion for summary judgment to dismiss this action on multiple grounds. (D.E. 52). Plaintiff filed a response and cross-motion for summary judgment. (D.E. 57).

For the reasons stated herein, it is respectfully recommended that the Court grant Defendants' motion for summary judgment based on Defendants' right to Eleventh Amendment immunity in their official capacities and deny Defendants' motion for summary judgment based on qualified immunity. It is further respectfully recommended that Plaintiff's motion for summary judgment be denied.

### I.     JURISDICTION.

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.

## II.    PROCEDURAL BACKGROUND.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is currently confined at the Connally Unit in Kenedy, Texas, although his complaint concerns events that occurred while he was incarcerated at the McConnell Unit in Beeville, Texas. Plaintiff filed his original complaint on June 2, 2014, alleging that between January 1, 2013 and December 1, 2013, he was subjected to unconstitutional conditions of confinement while held in Administrative Segregation (Ad. Seg.) at the McConnell Unit. (D.E. 1). In particular, Plaintiff complained that, during this time, he was denied recreation on 255 days, given a "johnny sack" or cold sack meal three times daily for 134 days, and deprived of a shower for 121 days. He named the following five individuals as Defendants: (1) Warden Maria D. Ramirez; (2) Assistant Warden Gary L. Currie; (3) P. Chapa, Assistant Region IV Director; (4) Captain James Thompson, III; and (5) Major James A. McKee. *Id*.

On July 29, 2014, a *Spears*[1] hearing was conducted, following which service was ordered on the five named Defendants. (D.E. 13).  On September 15, 2014, Defendants filed their answer and raised the defense of qualified immunity. (D.E. 15).

On December 1, 2014, Plaintiff filed his own Declaration made under penalty of perjury (D.E. 17), as well as the declarations of four other offenders attesting to the alleged unconstitutional conditions at the McConnell Unit. (D.E. 18-21).

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

On February 3, 2015, Defendants filed a partial motion for summary judgment to dismiss Plaintiff's claims for failure to exhaust administrative remedies which was granted in part. (D.E. 32, 41). Defendants sought an extension of time to file their dispositive motions (D.E. 47), that was granted on September 24, 2015. (D.E. 49). The motion for summary judgment and a motion to seal Exhibit One were filed on October 9, 2015. (D.E. 51, 52). Defendants also gave notice that they had served their Initial Disclosures on Plaintiff. (D.E. 53).[2] Plaintiff filed a response to the motion for summary judgment and a cross-motion for summary judgment. (D.E. 57).

### III.   SUMMARY JUDGMENT EVIDENCE.

The previous Memorandum and Recommendation summarized Plaintiff's grievance history. (*See* D.E. 32).  Only those grievances pertinent to the present summary judgment motion will be discussed.

Plaintiff was housed in administrative segregation and was kept in his cell 23 hours a day except for an hour each day on the days he was allowed to shower and/or exercise. On December 6, 2013, Plaintiff filed a Step 1 grievance, Grievance No. 201457108, complaining that on November 29 and 30, and December 1 and 2, 2013, Plaintiff was denied showers and recreation. (D.E. 24-1, pp. 5-6). Plaintiff related that this had been "going on for the whole year," that the denial of showers and recreation was causing him physical and mental anguish and that he had lost approximately 25 pounds as a result thereof. Plaintiff continued that, between January 1, 2013, and

---

[2] The Initial Disclosures consisted of 335 pages of Plaintiff's medical file for the period from October 1, 2012, through September 4, 2015. (D.E. 53).

December 1, 2013, he had been denied 181 showers and 235 recreation days, and he had been served 134 days-worth of johnny sack meals which were nutritionally inadequate.[3] *Id*. at 5. Plaintiff requested that matters be remedied or that he be transferred to another prison. *Id*.

Warden Ramirez denied Plaintiff's Grievance No. 201457108 on February 24, 2014, after an investigation (D.E. 24-1, pp. 8-13), responding:

> Complaint has been noted. The ML Unit Administration exhausts all measures to ensure that recreation and showers are completed daily. Due to current staffing issues there are occasions when recreation and showers are not completed. This limited movement is to ensure the safety and security of the offender population and staff. Furthermore, offenders are not denied recreation or showers, nor are privileges taken. No further action is warranted.

(D.E. 24-1, p. 6).

On February 25, 2014, Plaintiff filed a Step 2, Appeal of Grievance No. 2014057108, arguing that the routine feeding of johnny sack meals due to staff shortages violated the Eighth Amendment as well as Texas law that requires inmates be provided "wholesome and nutritious" meals. (D.E. 24-1, pp. 3-4). Plaintiff also objected to Warden Ramirez's explanation regarding showers and recreation. *Id*. at 3. On May 7, 2014, Assistant Region IV Director P. Chapa denied Plaintiff's Step 2 appeal finding that showers and recreation "are ran [sic] when staffing allows." *Id*. at 4.

Defendants filed portions of Plaintiff's 2014 medical records:

---

[3] During the *Spears* hearing, Plaintiff testified that the lunch and dinner johnny sacks usually included a sloppy joe sandwich, a peanut butter sandwich with jelly, and sometimes, but often not, a carton of milk. ERO July 29, 2014, at 3:11:43/3:14:37.

2014/02/20   Complaint chest pain, BP 176/94, weight 158 refused treatment (D.E. 52-1, p. 3);

2014/02/20   Complaint Constipation/Diarrhea BP 176/94 weight 158, prescribed hemorrhoidal ointment, milk of magnesia. Recommendations: Increase fluids to 8-12 glasses per day, increase exercise, Add bulk to diet, eat more vegetables, Encourage high fiber, green vegetables, fluid and moderate exercise to prevent constipation. (D.E. 52-1, pp. 5-10);

2014/04/08   Sick Call Request Requesting ointment for rash on neck and stomach (*Id.*, p. 12);

2014/05/24   Complaint Contact Dermatitis/Fungal Infection BP   136/72 Wt. 127 "Pt states he gets rash from using soap the State provides, also says he stays in shower too long, and he has used hydrocortisone before it takes care of the rash."  "Pt seen cell side. Rash noted to stomach and neck area." Hydrocortisone cream issued. Recommendations: "Wash skin regularly with soap and water. Dry skin well. . . .All clothing should be changed daily. . . .Cold showers may give temporary relief. . . ." (*Id.*, pp. 13-19).

Defendants' sole summary judgment evidence is thirteen pages of medical records summarized above. Plaintiff responded that the medical records provided by TDCJ for 2012 and 2013 do not show his weight.

Plaintiff's response to the motion for summary judgment included his handwritten logs that identified the days on which he was provided with johnny sack meals, not allowed showers and not allowed recreation. (D.E. 57, pp. 5-6). He included handwritten copies of his Step 1 and 2 Grievances on these issues. (*Id.*, pp. 7-14). Plaintiff additionally included a handwritten copy of the Regular Menu and Menu Planning Guidelines from the Food Services Policies and Procedures Manual. The court may also consider Plaintiff's sworn complaint and his testimony during the *Spears* hearing. *See Stewart v. Guzman,* 555 Fed. App'x. 425, 432 (5th Cir. Feb. 20, 2014) (per curiam) (designated unpublished) (considering verified complaint); *Hart v. Hairston*, 343 F.3d

762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit."). Separate from Plaintiff's summary judgment evidence, additional prisoners filed affidavits supporting Plaintiff's claims. (D.E. 18-21).

According to Plaintiff's summary judgment evidence, Plaintiff received johnny sack meals in 2013 for the number of days each month listed below. On some days all three meals were johnny sacks.

| | |
|---|---|
| January | 9 days. |
| February | 14 days |
| March | 19 days |
| April | 17 days |
| May | 3 days |
| June | 5 days |
| July | 6 days |
| August | 10 days |
| Sept. | 11 days |
| Oct. | 28 days |
| Nov. | 7 days |
| Dec. | 12 days |
| **TOTAL** | **141 days** |

(D.E. 57, pp. 5-6).

Plaintiff's logs identify dates on which he was not permitted to shower during 2013. An analysis of Plaintiff's logs indicates that he was denied showers on the number of days listed below during each month of 2013:

| | |
|---|---|
| January | 6 |
| February | 14 (5 days in a row denied the last week of the month) |
| March | 22 (denied showers 4 days in a row, twice that month) |
| April | 14 (no more than 3 days in a row) |
| May | 8 |
| June | 21 (denied showers for 8 days in a row twice that month) |
| July | 23 (denied showers for 14 days in a row in late July) |

| | |
|---|---|
| August | 21 (denied showers for 5 days in a row) |
| September | 16 |
| October | 22 (denied showers 6 days in a row twice that month) |
| November | 9 |
| December | 18 (denied showers 7 days in a row) |
| **TOTAL** | **194** |

(*Id.*)

Plaintiff's logs also identify the dates on which he was denied recreation outside

of his cell as summarized below for 2013:

| | |
|---|---|
| January | 12 days |
| February | 17 days |
| March | 31 days |
| April | 16 days |
| May | 13 days |
| June | 22 days |
| July | 30 days |
| August | 25 days |
| September | 21 days |
| October | 31 days |
| November | 16 days |
| December | 23 days |
| **Total** | **257 days** |

(*Id.*). Plaintiff was denied recreation on 37 consecutive days between February 24, 2013,

and April 1, 2013, and again from September 25, 2013, through November 3, 2013. For

22 consecutive days Plaintiff was denied recreation between June 23, 2013, and July 16,

2013.

## IV.    SUMMARY JUDGMENT STANDARD.

Summary judgment is proper if there is no genuine issue as to any material fact

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In

making that determination, a court must view the evidence 'in the light most favorable to

the opposing party.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Adickes v.*

*S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Anderson*, 477 U.S. at 249 (1986)) (internal citation omitted).

"A fact issue is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Stephenson v. McLelland*, ___ Fed. App'x. ___, 2015 WL 8017426 at *3 (5th Cir. Dec. 4, 2015) (per curiam) (designated unpublished) (citing *Cuadros v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010)). In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451.

## V.  DISCUSSION.

### A.  Movants' Grounds for Summary Judgment.

Defendants seek summary judgment on three grounds:

1) whether Plaintiff has established the requisite personal involvement of Defendants Chapa, Currie, or Ramirez,

2) whether Defendants Chapa, Currie, McKee, Ramirez, and Thompson are entitled to Eleventh Amendment immunity for claims against them in their official capacity, and

3) whether Plaintiff has overcome Defendants Chapa, Currie, McKee, Ramirez, and Thompson's entitlement to qualified immunity for claims against them in their individual capacities.

**B.  Requisite Personal Involvement.**

Defendants' seek summary judgment that Defendants Warden Ramirez, Assistant Warden Curry, and Assistant Region IV Director Chapa were not personally involved. Defendants produced no summary judgment evidence on this issue, but allege that Plaintiff cannot establish their personal involvement.

Plaintiff described the involvement of each of the defendants in his verified Complaint as follows:  Warden Maria D. Ramirez and Assistant Region IV Director of TDCJ-CID P. Chapa "failed to help and failed to supervise staff and review prison logs;" and Gary Currie, Warden II on the McConnell Unit "[was] not trying to help and not supervising staff or reviewing logs." (D.E. 1, p. 3). Plaintiff further alleged that the defendants allowed the conditions, "some more than others."

During the *Spears* hearing, Plaintiff additionally testified that Warden Ramirez and Assistant Warden Currie "cut back on food." (ERO July 29, 2014, at 3:10:13/3:11:22). Plaintiff had no personal conversation with Warden Ramirez, but she responded to his Step One grievance and Assistant Region IV Director Chapa responded to his grievance at Step Two. (*See* D.E. 24-1, pp. 3-13).

Personal-capacity suits seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). There is no vicarious supervisory liability in a § 1983 case. *See Pembaur v. City of Cincinnati*,

475 U.S. 469, 480 (1986) (discussing rule that vicarious liability does not apply in claim brought under section 1983); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987).

To hold a defendant liable based on his or her supervisory role over the prison staff, a defendant must show that (1) the defendant failed to supervise or to train the prison staff member; (2) a causal link exists between that failure and the violation of the defendant's rights; and (3) that failure amounts to deliberate indifference. *See Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998); *see also Walker v. Nunn*, 456 Fed. App'x. 419, 424 (5th Cir. Dec. 30, 2011) (per curiam) (designated unpublished). A defendant may escape failure-to-supervise liability by showing that she responded reasonably to complaints about staff misconduct. *See Walker*, 456 Fed. App'x. at 424.

Supervisory liability may also exist without overt personal participation in the offensive act if the supervisory official "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304 (internal citations omitted).

Plaintiff testified that daily logs are created in each unit that detail the events, including meal service, showers and recreation. During the *Spears* hearing, Plaintiff testified that Warden Ramirez and Deputy Warden Currie cut back on food for cost reasons. He further testified that even after Ramirez and Chapa's attention was directed to deprivation of calorically adequate food, regular showers and recreation for F-Pod that resulted in his alleged weight loss, skin rashes and other problems, that neither Ramirez, Curry nor Chapa addressed the issues. Plaintiff has produced some evidence that raises an

issue of material fact as to the personal involvement of these three defendants and the reasonableness of their responses.

## C. Eleventh Amendment Immunity.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't. State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted). "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Thus, to the extent the defendants are sued in their official capacities, Plaintiff may not recover money damages against them. *See Whitlock v. Hudson*, 459 Fed. App'x. 375, 377 (5th Cir. Jan. 25, 2012) (per curiam) (designated unpublished); *Walker v. Livingston*, 381 Fed. App'x. 477, 479 (5th Cir. 2010) (per curiam) (designated unpublished); *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).  Summary judgment in Defendants' favor is recommended.

## D. Qualified Immunity.

Defendants move for summary judgment on qualified immunity grounds. Qualified immunity shields an official who performs discretionary functions from civil liability when the official's actions meet the test of "official reasonableness." *Petta v. Rivera*, 143 F.3d 895, 899 (5th Cir. 1998) (per curiam); *Maze v. Hargett*, 200 F.3d 814, *5 (5th Cir. Oct. 27, 1999) (per curiam)(designated unpublished). Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Courts will not deny qualified immunity unless

"existing precedent . . . placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2083 (2011). A defendant is entitled to qualified immunity when 1) the plaintiff alleges a violation of a constitutional right and 2) that right was "clearly established" at the time of the alleged misconduct. *Id*. The inquiry may begin with either prong of the test. *Id*. at 236. A judge is permitted to exercise her sound discretion in deciding which part of the test to address first in light of the circumstances in the particular case. *Id*.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Milchalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005); *Huff v. McCullough*, No. 2:12-CV-00254, 2013 WL 5670882, at *5 (S.D. Tex. Oct. 15, 2013). The burden is on the plaintiff to establish that the official's conduct violated clearly established law. *Id*. Plaintiff cannot rest on his pleadings; but must instead show a genuine issue of material fact concerning the reasonableness of the official's conduct. *Bazen v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001).

**(1) Constitutional violation.**

Plaintiff claims that Defendants violated his right to be free from cruel and unusual punishment by serving him food that was not calorically adequate to maintain his weight, by regularly refusing to allow him to shower, and by routinely denying him exercise time during 2013 while he was housed in Administrative Segretation.  Plaintiff avers that he was injured both physically and psychologically by these deprivations.

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. "The Constitution does not mandate comfortable prisons . . . but neither

does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal quotations omitted)). Prison officials are required to provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions that "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A constitutional violation occurs only when two requirements are met: 1) the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need," and 2) the responsible prison official must have been "deliberately indifferent' to inmate health or safety." *Woods*, 51 F.3d at 581. "A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious bodily harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847; *see also Reeves v. Collins*, 27 F.3d 174, 176–77 (5th Cir. 1994).

### a. Calorically and nutritionally inadequate food

The deprivation of food constitutes cruel and unusual punishment *"only* if it denies a prisoner the 'minimal civilized measure of life's necessities.'" *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (emphasis added). "It is well-established that inmates must be provided nutritionally adequate food, prepared and served under

conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *Shrader v. White*, 761 F.2d 975 (4th Cir. 1985); *see also Davis v. Missouri*, 389 Fed. Appx. 579, 579-80 (8th Cir. 2010)(designated unpublished); *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986).[4] A prisoner is entitled only to reasonably adequate food. *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985).

The denial of food can rise to the level of a constitutional violation depending on the severity of the food deprivation. *See e.g., Atkins v. City of Chicago*, 631 F.3d 823, 830 (7th Cir. 2011) ("Depriving a person of food for four days would impose a constitutionally significant hardship."); *Foster v. Runnels*, 554 F.3d 807, 812–13 (9th Cir. 2009) (concluding that denial of 16 meals in 23 days was sufficient to support claim of deliberate indifference). A court must assess the amount and duration of the deprivation to make this determination. Weight loss may be evidence that a prisoner received constitutionally inadequate food. *See Obama v. Burl*, 477 Fed. App'x. 409, 412 (8th Cir. 2012) (per curiam) (designated unpublished); *Divers v. Dep't. of Corrections*, 921 F.2d 191, 194 (8th Cir. 1990). "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Hamm*, 774 F.2d at 1575.

---

[4] *See also Robinson v. Illinois State Corr. Ctr. (Stateville) Warden*, 890 F.Supp. 715, 720 (N.D. Ill. 1995) (quoting *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985)); *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983); *but see Madyun v. Thompson*, 657 F.2d 868, 874–75 (7th Cir. 1981) (allegation that food served to segregated prisoners was cold and not on the menu served to general prison population insufficient to state an Eighth Amendment violation).

Plaintiff testified that he was fed calorically inadequate meals in 2013 that resulted in significant weight loss. Defendants provide no evidence of Plaintiff's weight at the beginning of 2013, even though they controlled maintenance of Plaintiff's medical records. Defendants also failed to produce any summary judgment evidence from medical or nutritional experts that Plaintiff's weight was appropriate or that the johnny sack meals were nutritionally adequate during 2013. Defendants' summary judgment evidence establishes only that in early 2014, Plaintiff weighed 158 pounds, but by May 24, 2014, he weighed 127 pounds, a loss of 31 pounds. (D.E. 52-1, pp. 3, 13). Defendants argue that Plaintiff's weight of 158 pounds in February 2014 negates his claim of weight loss in 2013, despite no evidence of Plaintiff's weight in 2012 or 2013. Defendants do not address his 2014 weight loss over a three month period in 2014.

Plaintiff testified during the *Spears* hearing that the Warden and Deputy Warden intended to cut back on food in F-Pod and the decision to feed johnny sacks three times a day was made by Captain Thompson and Major McKee, in part based upon staffing shortages and in part due to laziness. He further testified that the staffing shortage cited by prison officials to explain the sack lunches was not the true reason since other prison activities appeared to be unaffected by the alleged staff shortages.  Additionally, Plaintiff orally informed Major McKee and Captain Thompson of his complaint regarding the adequacy of his food intake and his weight loss and also advised Warden Ramirez and Assistant Region IV Director that he had lost 25 pounds due to the restricted calories.

Plaintiff has created a disputed issue of material fact as to the caloric adequacy of the meals he was fed in Administrative Segregation during 2013 and as to whether the

weight he claims to have lost is an objectively serious health risk. In addition, there is a fact issue regarding Defendants' states of mind when they responded that no action was needed.

### b.  Showers

There is no absolute constitutional right to at least three showers a week or to showers during a three day period. *See Hamilton v. Lyons*, 74 F.3d 99, 106 n.8 (5th Cir. 1996) ("Hamilton alleges that he was denied visitation, telephone access, recreation, mail, legal materials, sheets, and showers for a three-day period. We find that none of these allegations give rise to a constitutional claim."); *see also Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988); *Gates v. Cook,* 376 F.3d 323, 338 (5th Cir. 2004) (citing *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989) (recognizing that "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time")).[5] Nevertheless, "certain prison conditions [are] so 'base, inhuman and barbaric' that they violate the Eighth Amendment." *Novak v.*

---

[5]  The Eighth Amendment does not require that inmates receive frequent showers. *DiFilippo v. Vaughn*, Civil No. 95–909, 1996 WL 355336 at *5 (E.D. Pa. June 24, 1996) (holding that the Eighth Amendment does not require that prisoners be afforded frequent or comfortable showers). Likewise, the Eighth Amendment does not require hot showers. *See Lopez v. Robinson*, 914 F.2d 486, 492 (4th Cir. 1990); *Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988) (holding that one shower a week constitutionally sufficient); *Veteto v. Miller*, 829 F.Supp. 1486, 1496 (M.D. Pa. 1992) (holding that deprivation of showers during 60 day period of placement in administrative detention did not violate the Eighth Amendment); *Devon v. Warden SCI–Mahanoy*, Civil No. 08–1448, 2008 WL 3890161, 4 (M.D. Pa. Aug. 19, 2008) (holding that thirteen days without shower, shave or recreation did not violate the Eighth Amendment); *Briggs v. Heidlebaugh*, Civil No. 96–3884, 1997 WL 318081 *3 (E.D. Pa. May 22, 1997) (holding that suspension of shower privileges for two weeks did not violate the Eighth Amendment).

*Beto*, 453 F.2d 661, 665 (5th Cir. 1971). One such condition is "the deprivation of basic elements of hygiene." *Id.*

Plaintiff alleges he was deprived of showers on 194 out of 365 days, sometimes going 14 consecutive days without a shower. *See* D.E. 57, p. 6. He alleges harm from the lack of showers in the form of skin rashes.

To rebut Plaintiff's allegations, Defendants provided excerpts from Plaintiff's 2014 medical records that show that he had skin rashes. The records reflect that Plaintiff reported the rashes were caused by staying too long in the shower or from using the soap provided by the prison. (D.E. 52-1, pp. 12-19). The records provided also refer to his previous use of hydrocortisone cream to clear up rashes. (D.E. 52-1, p. 15 "Pt. states he gets rash from using soap the state provides, also states he stays in shower too long, and *he has used hydrocortisone before it takes care of the rash*." (emphasis added)).  Plaintiff has demonstrated a fact issue precluding summary judgment on the issue of whether he was harmed when he was denied showers.

> c.  Lack of exercise and 24 hour a day confinement

Plaintiff's evidence reveals that he was denied recreation outside his cell on 257 days out of 365 days in 2013. Inmates have no protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a *per se* constitutional violation." *Lewis v. Smith*, 277 F.3d 1373, 2001 WL 1485821 at *1 (5th Cir. 2001) (citing *Miller v. Carson*, 536 F.2d 741, 751 n.12 (5th Cir. 1977) (per curiam) (designated unpublished); *Stewart v. Winter*, 669 F.2d 328, 336 n. 19 (5th Cir. 1982)); *see also Martin v. Scott*, 156 F.3d 578, 580 (affirming limits on recreation times). "What is

constitutionally required, however, is that [the prisoner] not be confined for long periods without the opportunity for regular physical exercise." *Lewis*, 2001 WL 1485821 at *1 (citation omitted).

To succeed on a claim for lack of exercise, Plaintiff must provide facts that "support the existence of any health hazard under the specific circumstances involved." *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir.), *amended in part, vacated in part on other grounds*, 688 F.2d 266 (5th Cir. 1982). In this case, Plaintiff complains that, due to lack of exercise and the other conditions complained of, he lost 25 pounds, he began having high blood pressure, and suffered related psychological difficulties that led to depression, self-harm and suicide attempts. He provided summary judgment evidence as to the specific dates he was denied exercise. The medical evidence filed by Defendants reflects that his blood pressure was 176/94 in February 2014, a reading that is higher than medical guidelines recommend.[6] (D.E. 52-1, pp. 3, 5). Plaintiff testified that before his solitary confinement, he did not have any chronic health conditions and was healthy. (ERO July 29, 2014, at 3:18:20/3:18:47). Plaintiff also testified that the lack of exercise affected his mental status making him more aggressive than usual, making him depressed to the point of suicide attempts and self-mutilation, and that he requested medication for his psychological condition. In addition to lack of exercise, Plaintiff testified the lack of showers on days that he was also not permitted exercise resulted in 24 hour a day solitary

---

[6] Blood pressure of 140/90 is considered to be high. Adult blood pressure is considered normal at 120/80. http://www.health.harvard.edu/blog/new-guidelines-published-for-managing-high-blood-pressure-201312186953, last viewed January 22, 2016.

confinement. The conditions Plaintiff alleges were caused by solitary confinement are the kinds of conditions that are well-documented to result from 23 hours a day in solitary confinement. *See Davis v. Ayala*, 135 S.Ct. 2187, 2210 (2015) (J. Kennedy concurring).[7]

Extended deprivation of exercise opportunities may violate an inmate's right not to be subjected to cruel and unusual punishment. *Id*. at 1152 ("Of particular importance in determining an inmate's need for regular exercise are the size of his cell, the amount of time the inmate spends locked in his cell each day, and the overall duration of confinement."); *see also Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) (outdoor exercise required when prisoners otherwise confined in small cells almost 24 hours per day). Unless he was permitted to shower or exercise, Plaintiff was confined 23 hours a day in a cell he described during his *Spears* hearing as 7 x 8 feet.

Courts have recognized that extended periods of lock-down can violate the Eighth Amendment. *See, e.g., Hernandez v. Velasquez,* 522 F.3d 556, 561-62 (5th Cir. 2008) (lockdown that results in impairment of health may state Eighth Amendment claim);[8] *Delaney v. DeTella*, 256 F.3d 679, 686 (7th Cir. 2001) (six-month lock-down). Lockdown periods of less than thirty days, however generally do not violate the Eighth

---

[7] J. Kennedy cited to Grassian, Psychiatric Effects of Solitary Confinement, 22 Wash. U.J.L. & Pol'y 325 (2006) for the proposition that such confinement has common side-effects of "anxiety, panic, withdrawal, hallucinations, self-mutilation, and suicidal thoughts and behaviors." *Id*.

[8] In *Hernandez*, defendant was denied all out-of- cell exercise privileges for a year while housed in administrative segregation based upon his suspected gang membership. He was allowed to leave his cell only for showers, medical appointments, and family visits. Hernandez claimed that due to his confinement his "muscles have allowed to atrophy-stiffening up and he has lost his range of movement and flexibility." Hernandez also complains he suffered from depression. His Eighth Amendment claim was denied because he could not establish deliberate indifference. *Id*.

Amendment. *See e.g., Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (twenty-eight days in segregation); *Caldwell v. Miller*, 790 F.2d 589, 601 (7th Cir. 1986) (thirty days of twenty-four hour lockdown).  Plaintiff has stated a Constitutional violation based on his lack of daily exercise outside of his cell.

    **(2) Objective Reasonableness.**

    For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *Mitchell v. Forsyth*, 472 U.S. 511, 529 (1985). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. Even officers who interpret the law mistakenly but reasonably are entitled to immunity. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). The reasonableness of action taken must be assessed in light of "clearly established law" at the time. *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 928 (5th Cir. 1992).

    The constitutional right to adequate and nutritional food has been well-established for decades. *See George v. King*, 837 F.2d 705, 707 (5th Cir. 1987); *Green*, 788 F.2d at 1125; *Newman*, 559 F.2d at 291. Significant weight loss is some evidence that an inmate did not have access to adequate food in the absence of other health conditions that would account for the weight loss. Plaintiff's evidence, which establishes notice of weight loss that he claims resulted from calorically inadequate food, raises a fact issue as to Defendants' state of mind and whether it constitutes deliberate indifference.

Plaintiff was denied recreation for periods of up to 37 days consecutively on more than one occasion and 235 days out of 365. Since 1977 at least, the Fifth Circuit has recognized that extended deprivation of exercise opportunities to the extent it results in an impairment of health may violate the Eighth Amendment. *See Miller*, 563 F.2d at 751 n.12;[9] *Ruiz*, 679 F.2d at 1152.

Despite Plaintiff's limited access to showers, the deprivation he describes is not by itself one of constitutional magnitude. *See Vasquez v. Braemer*, 586 Fed. App'x. 224, 228 (7th Cir. Sept. 23, 2014) (designated unpublished) ("Allowing inmates only two showers and four hours of outdoor exercise each week does not violate the Eighth Amendment" for inmates in administrative segregation).

However, Plaintiff has produced evidence that he was deprived of showers and regular exercise which were his only opportunities to leave his cell and that the cell was too small to do anything other than push-ups. He testified that the lack of regular exercise caused a rise in his blood pressure which is supported by the medical records. He also stated that he suffered mentally and emotionally because of the isolation.  Again, the Defendants were notified of the lengthy solitary confinement periods and Plaintiff's allegations of harm, but determined that no action was needed. Plaintiff's evidence raises an issue of material fact as to Defendants' state of mind and whether it rose to the level of deliberate indifference.

---

[9] "Although deprivation of exercise per se does not violate the cruel and unusual punishment clause, prisoners are not wholly unprotected; such a deprivation may constitute an impairment of health forbidden under the eighth amendment." *Id*. (internal citations omitted).

## V.      PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT.

Plaintiff filed a cross-motion for summary judgment, arguing that the uncontested evidence establishes that a staff shortage at the McConnell Unit caused unconstitutional conditions of confinement such that he is entitled to summary judgment. *Hudson v. McMillian*, 503 U.S. 1, 810 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although Plaintiff has raised a fact question on the issues of inadequate food, exercise, and time out of his cell as well as resulting harm and Defendants' state of mind, Plaintiff has not conclusively established his entitlement to relief. As a result, he is not entitled to affirmative summary judgment.

## VI.      RECOMMENDATION.

Based on the foregoing, it is respectfully recommended that the Court grant Defendants' motion for summary judgment (D.E. 52) in part and dismiss all claims against Defendants in their official capacities. It is recommended that the Court deny Defendants' summary judgment motion (D.E. 52) based on the on the qualified immunity of Defendants in their individual capacities for money damages because there remain questions of material fact as to Defendants' personal involvement and state of mind, and the harm and risk of harm to Plaintiff as a result of the deprivation of calorically sufficient food, sufficient exercise, and sufficient time out of his cell to preserve his health.  Finally, it is respectfully recommended that Plaintiff's cross-motion for summary

judgment be denied (D.E. 57) as genuine issues of material fact exist on the issues of immunity and personal involvement.

Respectfully submitted this 11th day of February, 2016.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).